IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. ) <br> J.B. BOSTON, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> DEIDRE BATTAGLIA, Warden, Stateville ) <br> Correctional Center, ) <br> ) <br> Defendant. ) | No. 05 C 1779 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Petitioner J.B. Boston has brought a pro se petition for habeas corpus relief pursuant to the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254 seeking to overturn his state conviction for rape, armed robbery and home invasion. For the reasons set forth below, the petition is denied.

## BACKGROUND

On November 8, 1985, following a jury trial in the Circuit Court of Cook County, Illinois, petitioner was convicted of rape, armed robbery and home invasion and sentenced to a natural life term of imprisonment on each offense. He filed a direct appeal raising a number of issues, including a challenge to the jury selection process pursuant to the then-recent Supreme Court opinion in Batson v. Kentucky, 476 U.S. 79 (1986). On March 17, 1988, the Illinois Appellate Court affirmed petitioner's conviction and sentence but remanded for a hearing pursuant to Batson. On June 2, 1988, petitioner filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court raising the same issues raised in the direct appeal brief. On October 6, 1988, the Illinois Supreme Court denied the PLA.

On remand, the trial court held a Batson hearing and determined that petitioner failed to establish a prima facie case of discrimination, confirming the conviction and sentence. Petitioner appealed that decision to the Illinois Appellate Court arguing that the trial court's findings were against the manifest weight of the evidence and that the court erred in considering race-neutral explanations offered by the prosecutor prior to determining whether a prima facie case of discrimination had been established. The Illinois Appellate Court affirmed the judgment. People v. Boston, 224 Ill. App.3d 218 (1st Dist. 1991).

After denial of rehearing, petitioner filed a PLA to the Illinois Supreme Court, which was denied. Petitioner then filed his first pro se post-conviction petition arguing that the Batson hearing was improper and his trial counsel was ineffective by failing to argue that petitioner was ineligible to be sentenced as a habitual criminal. The Circuit Court dismissed the petition as frivolous and patently without merit. Petitioner appealed, arguing, among other issues not relevant to the instant petition, that the trial court erred by holding that the Batson issue was barred by res judicata based on the holding in petitioner's direct appeal because the law had changed dramatically. The Illinois Appellate Court affirmed the conviction and petitioner's PLA was denied.

Petitioner filed a second pro se post-conviction petition, which was denied as frivolous. Petitioner appealed and was appointed a public defender who subsequently moved for and was granted leave to withdraw pursuant to Pennsylvania v. Finley, 481 U.S. 551 (1987). The appellate court affirmed that judgment. Petitioner filed a PLA raising the Batson issue, which was denied.

Having exhausted all state court avenues for relief, petitioner filed the instant petition, arguing that the trial court improperly considered the prosecutor's explanations for the peremptory strikes in determining that petitioner had not demonstrated a prima facie case of discrimination.

**DISCUSSION**

To obtain habeas relief under the AEDPA petitioner must establish that the state court proceedings resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." McFowler v. Jaimet, 349 F.3d 436, 446 (7th Cir. 2003). The relevant decision is the decision of the last state court to rule on the merits of petitioner's claim which, in the instant case, is the decision of the Illinois Appellate Court denying petitioner's direct appeal.

The state court's decision is "contrary to" clearly established federal if the state court arrives at a conclusion opposite of that reached by the United States Supreme Court on a question of law or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Court. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). In the instant case, there is no claim that the state court decision is contrary to" clearly established law.

Whether the state court decision involved an unreasonable application of federal law is analyzed under an objective standard: whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. It is a difficult standard to meet, because

3

unreasonable means "something like lying well outside the boundaries of permissible differences of opinion." McFowler, 349 F.3d at 447. A federal habeas court "may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Jackson v. Frank, 348 F.3d 658, 662 (7th Cir. 2003).

Within the context of the instant case, the question is whether the state court's application of Batson to the facts of the jury selection process in petitioner's trial was objectively unreasonable. Batson outlines a three-step process for determining whether a peremptory strike violates the Equal Protection Clause: (1) the defendant must establish a prima facie case that the strike was racially motivated; (2) the burden then shifts to the prosecutor to come forward with a race-neutral reason for the strike; and (3) the trial judge must then assess the credibility of the explanation and determine whether purposeful discrimination has been established. Lamon v. Boatwright, ___ F.3d ___, 2006 WL 3209916 at *2 (7th Cir. Nov. 8, 2006).

In the instant case, on remand the trial court indicated that the hearing would follow this process, first requiring defendant to establish facts giving rise to a prima facie case of discrimination and, if defendant was successful, the prosecutor would be required to come forward with neutral explanations for the use of his peremptory challenges.

According to the appellate court opinion, it was undisputed that the jury had been composed of three African Americans, one Hispanic, one Asian, and seven Caucasians. The two alternate jurors were African American. The racial make-up of the entire venire is undisclosed in the record. The parties agreed that the State used its eight peremptory challenges to excluded seven African Americans and one Caucasian. At that point defense counsel sought to question

4

the prosecutor who exercised the peremptory challenges. The State objected, arguing that the prosecutor is not required to offer race-neutral explanations until the defendant first established a prima facie case of discrimination. Defense counsel indicated that he would limit his questions to issues relevant to establishing a prima facie case, but before any questions were posed, petitioner elected to proceed pro se. Boston, 224 Ill. App.3d at 220.

After the court admonished the petitioner as to the wisdom of proceeding pro se, petitioner argued at length regarding the characteristics of the jurors and excluded venire members. Petitioner was then allowed to question the prosecutor as to reasons for excluding certain jurors. More argument was presented, with the prosecutor giving explanations to justify the exclusion of the seven African American venire members. The court then indicated that he had known the original prosecutor, Arthur Neville, from many trials and that in his experience Mr. Neville had never shown any racial bias or prejudice. The court then asked Mr. Neville to give some reasons for excluding jurors. Neville explained in very general terms that he tended to exclude jurors who were very religious or who lived in the same general area as the defendant. He also listed evasiveness in responding and lack of ties to the community as possible reasons for exclusions. Id. at 221.

The court then found that petitioner had failed to establish a prima facie case of discrimination, noting that 25% of the jury was African American, and two other jurors were members of minority groups. The two alternate jurors were also African American. The court also stated, "it is obvious the State was looking for people, if they could find them, who had some understanding of being the victim of a crime. Most, if not all of the jurors, most of the jurors who were, in fact, selected, had this characteristic which was different and separate from

the characteristic of any of the jurors who were excluded." Id. Finally, the court, after receiving the explanations given by the prosecutor, concluded "I don't believe, under the circumstances, and my knowledge of the work of Mr. Neville and Mr. Webber that there was any selection in the case that had anything to do with race; that there were non-racial reasons." Id.

On appeal, petitioner contended that the trial court erred both procedurally, by considering the explanations offered by the State before ruling on whether petitioner had met his burden of establishing a prima facie case, and in its ultimate finding that defendant had not met that burden.

The Illinois Appellate Court quickly dispensed with the procedural argument, relying on Hernandez v. New York , 500 U.S. 352 (1991), in which the trial court had heard the race-neutral explanations offered by the prosecutor and ruled on the ultimate issue of intentional discrimination without first determining whether the defendant has established a prima facie case of discrimination. The Supreme Court was unconcerned with the departure from the normal course of proceeding, stating "once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of wether the defendant had made a prima facie showing becomes moot." Id. at 358. Based on Hernandez, the Illinois Appellate Court rejected petitioner's procedural argument and focused instead on whether the trial court erred in finding that no discrimination occurred. Boston, 224 Ill. App.3d at 222. After reviewing the trial court's reason for the its decision, including the court's statements about its familiarity with the prosecutor who selected the jury, the appellate court concluded that it was not left with a

6

"definite and firm conviction that a mistake" was committed and affirmed the conviction. Id. at 224.

It is worth noting that the appellate court's opinion on direct appeal was split. Justice Johnson dissented, because he was "left with a definite and firm conviction that a mistake has been made in this case." Id. In Justice Johnson's view, the prosecutor's reasons for excluding six of the nine African-American venire members tendered by the defense was non-specific to each prospective juror, and effectively eliminated from the jury pool anyone living on the south side of Chicago and its immediate environs. Moreover, the state's second reason for excluding the African-American venire persons in question -- their activities in religious and charitable organizations -- was disingenuous because the prosecutors did not ask the jurors specific questions with respect to any such organizations. Justice Johnson concluded that the group of African-American venire persons excluded was heterogeneous, and that "[i]t appears that the only characteristic shared by all of these particular venire persons was their race." Justice Johnson concluded that there was clear evidence of intentional racial discrimination by the prosecution. Of course, the two other members of the Appellate Court panel did not agree, and petitioner's conviction was affirmed.

In the instant petition, petitioner again challenges both the method used by the trial court in the Batson hearing as well as the court's final decision. As noted above, under the AEDPA this court's review is limited to determining whether the Illinois Appellate Court's decision amounts to an unreasonable application of Batson, meaning that the court's decision "lies well outside the boundaries of permissible difference of opinion." McFowler, 349 F.3d at 437.

With respect to petitioner's procedural argument, the answer is simple. The Appellate Court identified the governing legal rule and Supreme Court cases and applied them appropriately. Whether petitioner established a <u>prima facie</u> case of discrimination becomes moot once the trial court found that the prosecutor had not purposefully discriminated. <u>Hernandez</u>, 500 U.S. at 358.

With respect to the ultimate determination that there was no purposeful discrimination, the question is more difficult, but ultimately leads to the same conclusion. As Justice Johnson's dissenting opinion in the Appellate Court noted, there are serious concerns about the prosecutor's reasons for excluding the venire persons in question. Nevertheless, this court cannot conclude that the Illinois Appellate Court's decision is objectively unreasonable as that standard has been applied under the AEDPA. Although there is room for disagreement, the decision is not outside the bounds of permissible difference of opinion. Accordingly, the petition for a writ of habeas corpus is denied.

## **<u>CONCLUSION</u>**

For the reasons set forth above, the petition for habeas corpus relief is denied.

**ENTER:    December 4, 2006**

_____
**Robert W. Gettleman
United States District Judge**